907 F.2d 1139
 17 Fed.R.Serv.3d 280
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Robert B. SCARLETT, Appellant,
Gerald N. KLAUBER, Plaintiff,
v.
BERKSHIRE LIFE INSURANCE COMPANY, Defendant-Appellee,
and
Paul Gibbons, Trustee of Fine, Gibbons & MacMeekin, P.A.
Employee Retirement Pension Plan F/K/A Fine & Klauber
Employee Retirement Benefit Plan; Howard Fine, Trustee of
Fine, Gibbons & MacMeekin, P.A. Employee Retirement Pension
Plan f/k/a Fine & Klauber Employee Retirement Benefit Plan,
Defendants.
 No. 89-1541.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1990.
Decided June 12, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-87-770-HAR)
 Stephen John Hughes, Miles & Stockbridge, Baltimore, Md., (Argued), for appellant: Mark D. Gately, Miles & Stockbridge, Baltimore, Md., on brief.
 Michael Patrick Smith, Weinberg and Green, Baltimore, Md., (argued), for appellee; Leo Howard Lubow, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
 Before WIDENER, K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Robert B. Scarlett, counsel for the plaintiff in the underlying civil action, appeals from an order imposing sanctions against him under Fed.R.Civ.P. 11. We affirm the decision to award sanctions, but we remand with instructions to apportion the amount awarded between Scarlett and his client, Gerald N. Klauber. We also remand for the purpose of allowing the district court to clarify the basis for the amount awarded.
 
 I.
 
 2
 Klauber and Howard Fine were former law partners. When their firm dissolved, Klauber sued Fine in state court for Fine's alleged mishandling of and fraud involving the former law firm's retirement fund. Fine had been a trustee of the fund. Klauber initially retained Michael Marr, a partner in the law firm of Marr and Bennett, but eventually took the matter to another attorney. Scarlett, then an associate with Marr and Bennett, had primary responsibility for a partition suit filed by Marr which involved certain property owned by the dissolved firm.
 
 
 3
 In 1984, Klauber and Fine executed a Settlement Agreement and Release by which Klauber received a lump sum settlement for his share of the former firm's pension fund. Both parties expressly agreed that the mutual releases were intended to cover all claims traceable "either directly or indirectly" to the events related to the pension fund and the dissolution of the firm. Because Marr was still attorney of record in the underlying action, a notice of contemplated dismissal was sent to him in January 1985. A motion for suspension of the dismissal rule[1] was filed by Scarlett at Marr's request. The basis for the motion was that the partition case, which Scarlett was still handling, was tied to the pension case. The motion was granted, and the pension case was continued for one year.
 
 
 4
 In November 1986, Klauber discussed with Scarlett the possibility of bringing an action against Fine, Paul Gibbons (another trustee of the pension fund), and Berkshire Life Insurance Company. Berkshire had performed actuarial and other services related to the pension fund. At Klauber's request, Scarlett agreed to not discuss the matter with Marr. For the next four months, Scarlett and two law clerks researched ERISA and the pension plan's filings at the Department of Labor. On March 31, 1987, Scarlett filed an action against Berkshire, Fine, and Gibbons for alleged mishandling of the pension fund. The complaint contained claims of ERISA violations as well as various state law claims.
 
 
 5
 Counsel for the defendants promptly contacted Scarlett and apprised him of the prior settlement in the first pension case. Scarlett advised the defendants' counsel that he wished to research the matter further to determine if Klauber had any cause of action remaining, and the parties agreed to extend the time in which answers had to be filed.
 
 
 6
 Instead of moving to voluntarily dismiss the complaint, however, Scarlett filed a motion on December 1, 1987, to withdraw as counsel. In this motion, Scarlett claimed that he was unaware of the settlement agreement in the first pension case. The defendants filed motions to dismiss the complaint on January 19, 1988. Because his motion to withdraw had not yet been ruled upon, Scarlett timely filed a response on Klauber's behalf in opposition to the motions to dismiss. Some weeks later, Scarlett was permitted to withdraw as counsel in the case.
 
 
 7
 In September 1988, a hearing was held on the motions to dismiss. Klauber did not appear in person or by counsel. The court found that the settlement in the first pension case extinguished any causes of action Klauber might have had with regard to the pension plan and that the suit filed by Scarlett was "utterly ridiculous." By order entered September 30, 1988, the court dismissed the action against all defendants with prejudice.
 
 
 8
 On October 28, 1988, the defendants filed motions pursuant to Fed.R.Civ.P. 11 seeking sanctions against Klauber and Scarlett.[2] The court focused on the complaint and found that Scarlett failed to conduct an adequate pre-filing investigation. The court concluded that Klauber's actions in pursuing a second pension case merited sanctions and instructed the defendants to submit evidence of their costs, including attorney's fees, for review. Berkshire submitted a request for $17,328.27 for costs and attorney's fees; Fine and Gibbons requested $9,098.63. After reviewing the submissions of the various parties, the court ordered that Klauber and Scarlett be held jointly and severally liable to the defendants in the amount of $33,607.03. Scarlett settled with the individual defendants, and a stipulation to this effect was filed with the court. Scarlett appeals from the order to the extent that it holds him liable to Berkshire. Klauber does not appeal.
 
 II.
 
 9
 On appeal, Scarlett contends that the district court lacked jurisdiction to entertain the sanctions motion because the motion was untimely under local rules governing motions for costs and attorney's fees. Second, he contends that the sanctions against him were based on an erroneous finding of fact and must therefore be reversed. Scarlett also argues that sanctions were unwarranted because existing law warranted the claims against Berkshire, a non-party to the 1984 settlement between Klauber and Fine. His last contention is that the amount of the sanctions assessed constituted an abuse of discretion. We will discuss each of these arguments in turn.
 
 
 10
 General Rule 23A of the Maryland district court's local rules, which was in effect during the period involved, reads as follows:
 
 
 11
 Except as otherwise provided by statute, or Local Rule 23B, or ordered by the Court, a motion for attorney's fees claimed by a prevailing party and/or such party's attorney must be filed by said party of attorney within twenty (20) days of the entry of judgment. Any motion for attorney's fees must set forth the nature of the case, the claims as to which the party prevailed, the claims as to which the party did not prevail, a detailed description of the work performed broken down by hours or fractions thereof expended on each task, the attorney's customary fee for such like work, the customary fee for like work prevailing in the attorney's community, a listing of any expenditures for which reimbursement is sought, any additional factors which are required by the case law, and any additional factors that the attorney wishes to bring to the Court's attention. Non-compliance with the time limits established by this Local Rule and by Local Rule 23B shall be deemed a waiver of any claim for attorney's fees. Local Rule 6(A) and 6(G) are applicable.
 
 
 12
 General Rule 23 allows twenty days for the filing of a "bill of costs" by a prevailing party. Berkshire's motion for sanctions was filed more than twenty days after the date judgment was entered dismissing the action. Scarlett argues that Berkshire waived any claim for costs and attorney's fees, and that the district court lacked the jurisdiction to award costs and fees in the face of such a waiver. We concur with the district court's view that these local rules do not apply to fees and costs awarded under Rule 11.
 
 
 13
 Under the local rule, only the "prevailing party" may request attorney's fees; under Rule 11, sanctions are available to either party. In support of his position, Scarlett points to the inclusion of Rule 11 motions in the recently recodified version of Local Rule 23A.[3] This argument, however, cuts both ways. While it may well be that the district court amended the rule to express its original intent, it is equally likely that the rule was amended because the court recognized that the old version clearly did not include motions for sanctions.
 
 
 14
 In examining the parameters of this local rule, we are guided by the general principle that the district court is the best judge of its own rules. United States Fidelity and Guaranty Co. v. Lawrenson, 334 F.2d 464, 467 (4th Cir.), cert. denied, 379 U.S. 869 (1964). The district court was apprised of the possible applicability of the local rule's time limit and found this limit to be no impediment to Rule 11 sanctions. See Hicks v. Southern Maryland Health Systems Agency, 805 F.2d 1165, 1167 (4th Cir.1986) (Local Rule 23A is not jurisdictional) (dicta). We hold that the local rules did not constitute a jurisdictional restriction on the district court's authority to grant Rule 11 sanctions.
 
 III.
 
 15
 Scarlett contends that the district court based its decision to sanction him on a completely unsupported finding of fact and, therefore, the award must be overturned. He points to the court's finding that he was "aware" of the first pension case prior to the time he filed the second case. We believe that the evidence, however, clearly supports this finding of fact.
 
 
 16
 Rule 11 imposes a mandatory duty upon a lawyer to conduct an adequate investigation of a case prior to filing a complaint. Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987). The record amply supports the conclusion that Scarlett failed to adequately investigate the merits of Klauber's claims. Although Scarlett's actual knowledge of the prior settlement agreement is not dispositive, we find no error in the court's finding. An objective test is used to determine the reasonableness of a lawyer's prefiling investigation. Stevens v. Lawyers Mut. Liab. Co. of North Carolina, 789 F.2d 1056 (4th Cir.1986). Under such a standard, Scarlett's conduct was clearly sanctionable.
 
 
 17
 Scarlett asserts that he "relied and had to rely on Mr. Klauber, a former attorney, to inform him of the facts surrounding the first pension case." Appellant's brief at 37. Klauber's insistence that Scarlett not discuss the matter with Marr, however, should have put Scarlett on notice that something was amiss. In the complaint, Scarlett alleged that Klauber had previously retained another lawyer, Andrew Graham, to investigate the possible underfunding of the pension plan. Scarlett apparently failed to contact Graham about his involvement; had he done so, he no doubt would have discovered the existence of the settlement. See Southern Leasing Partners, Ltd. v. McMullan, 801 F.2d 783, 788 (5th Cir.1986) ("Blind reliance on the client is seldom a sufficient inquiry and certainly not when the prior history of a case at the courthouse may well be dispositive...."). Even more damaging to Scarlett's argument is the fact that he actually signed and filed a motion to suspend the dismissal rule in the first pension case. We do not disagree with his assertion that it was not necessary, in preparing the motion at Marr's request, to become familiar with the underlying basis for the suit. However, knowledge of the existence of the first pension case is all that the district court charged him with. Scarlett's duty to investigate his suit certainly encompassed a duty to discover the status of this first suit. The court did not err in its finding that Scarlett was aware of the first pension case, and there was no abuse of discretion in the imposition of Rule 11 sanctions.
 
 IV.
 
 18
 Scarlett attempts to justify Klauber's claims against Berkshire, a non-party to the settlement agreement in the first pension case, and, by extension, argues that the filing of the complaint in the instant action was not sanctionable vis-a-vis Berkshire. We disagree. The settlement agreement clearly precluded all claims by Klauber which were in any way related to the pension fund. The language of the settlement could not be clearer.
 
 V.
 
 19
 Despite our decision that the district court did not abuse its discretion in awarding sanctions against Scarlett on the basis of his signing of the complaint, we are troubled by two aspects of the award. First, the record before us does not reveal the source of that portion of the award which exceeds Berkshire's and the individual defendants' combined fee request. Berkshire's attorney fees and costs totalled $17,328.27, and Fine and Gibbons' totalled $9,098.63, for a combined total of $26,426.90. The district court, however, imposed sanctions in the amount of $33,607.03. We remand, therefore, to allow the district court to clarify the source of this additional $7,180.13.
 
 
 20
 The second troubling aspect of the award is its joint and several nature. The extent of Scarlett's culpability strikes us as being appreciably less than Klauber's. That Klauber asked Scarlett to not discuss the case with Marr is strong evidence of Klauber's belief that the second suit was unjustified. As an attorney, Klauber's actions were, in the words of the district judge, "particularly offensive." Scarlett's violation, on the other hand, appears to be more the result of inexperience than anything else. Under the facts of this case, we think the better course would have been to apportion the sanction award between the two guilty parties. Therefore, we reverse and remand with instructions to allocate the responsibility for the violation of the rule and to apportion the sanction award accordingly.[4]
 
 
 21
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Under Maryland Rule 2-507, parties are notified by the court clerk that their case may be subject to dismissal for any of a number of reasons, e.g., lack of prosecution. Under Rule 2-507(e), the court may defer entry of a dismissal order on the motion of a party filed within thirty days after service of the notice
 
 
 [2]
 Berkshire also sought sanctions against the law firm of Marr and Bennett. The court denied this portion of the motion on the grounds that Rule 11 applies only to parties and persons who sign pleadings. This view correctly anticipated the subsequent decision in Pavelic & LeFlore v. Marvel Entertainment Group, 110 S.Ct. 456 (1989)
 
 
 [3]
 Effective July 1, 1989, Local Rules 23 and 23A were amended and recodified as General Rule 109. Rule 109 reads in pertinent part: "Unless ... otherwise ordered by the Court, any motion (including motions filed under Fed.R.Civ.P. 11) requesting the award of attorney's fees must be filed within twenty days of the entry of judgment for all services performed prior thereto...."
 
 
 [4]
 The district court found that Scarlett discussed whether to take the pension case with Bennett, the managing partner, and that it was decided that Scarlett would take the case. Although the court correctly denied Rule 11 sanctions against the firm, we direct that the district court, on remand, inquire further into the relative culpability of the firm and its partners. If misconduct is found, the court may be inclined to explore alternative avenues by which the offending attorney(s) might be sanctioned