[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO STRIKE #106
The plaintiff, the Federal Deposit Insurance Corporation, ("FDIC") is the receiver for an entity known as The Bank Mart. In a complaint filed on January 28, 1994, the plaintiff alleges that pursuant to a promissory note dated October 10, 1989 (attached as exhibit "A" to the complaint), the defendants, John and Barbara Piccolo, promised to pay to The Bank Mart the sum of $100,000.00 in accordance with the terms and conditions set forth in said note. The plaintiff is now the holder of this note. The plaintiff alleges that despite demand, the defendants have failed to pay installments on the note as they became due. The plaintiff further alleges that as a result of the defendants' failure to pay, the entire balance in the amount of $116,723.62 (including principal, interest, late charges, and reasonable attorney's fees) is now due and owing. (In conjunction with its action on the note, the plaintiff attached real property owned by Barbara Piccolo, located in Newtown, Connecticut. The note which is the subject of this action is secured by a mortgage on the defendants' real property located in Stratford, Connecticut.)
On March 18, 1994, the defendants filed an answer, along with six special defenses and a four-count counterclaim. In the first special defense, the defendants allege that since the parties entered into loan restructuring agreements, and since the plaintiff breached these agreements, the plaintiff should be estopped from suing on the note. In the second special defense, the defendants allege that the plaintiff has wrongfully attached Barbara Piccolo's residence, and slandered her title. In the third special defense, CT Page 6265 the defendants allege that the promissory note is without consideration as to Barbara Piccolo, as the loan was for the benefit of John Piccolo. In the fourth special defense, the defendants allege that since the plaintiff and John Piccolo agreed to extensions and modifications of the note, Barbara Piccolo should be released and discharged from the note. In the fifth special defense, the defendants allege that since the plaintiff and John Piccolo agreed to material modifications of the note, Barbara Piccolo should be released and discharged from the note. In the sixth special defense, the defendants allege that by requiring John Piccolo to obtain the signature of Barbara Piccolo on the subject note, despite the fact that John Piccolo qualified for the credit extended and the application was not a joint application, the plaintiff violated 15 U.S.C. § 1691 et seq., and Regulation B,12 C.F.R. § 202.1 et seq., and 202.5(c)(1) et seq.
In the first and second counts of their counterclaim, the defendants assert claims for intentional and negligent infliction of emotional distress respectively against the plaintiff. In the third count, the defendants allege that the plaintiff violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., by requiring Barbara Piccolo to sign the note. In the fourth count, the defendants allege that the plaintiff violated General Statutes § 46a-66 by requiring Barbara Piccolo to sign the note.
The plaintiff now moves (#106) to strike the first, third, fourth, fifth and sixth special defenses, and the third and fourth counts of the defendants' counterclaim, on the ground that these defenses and claims are barred by 12 U.S.C. § 1823(e) and cases concerning it (the "D'Oench, Duhme Doctrine"). The plaintiff moves to strike the second special defense and the first and second counts of the counterclaim on the ground that the defendants executed a commercial mortgage note which included a waiver as to all rights to notice and a prior court hearing or court order in conjunction with any prejudgment remedy that the plaintiff might seek.
"Whenever any party wishes to contest the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or any one or more counts thereof, to state a claim upon which relief may be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 152(1); Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989). The motion to strike may also be used to test the legal sufficiency of a special defense. Practice Book § 152(5); Nowak v.CT Page 6266Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978). In ruling on a motion to strike, the court is limited to the facts alleged in the pleading; Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988); which must be construed in the light most favorable to the pleaderGordon v. Bridgeport Hospital, 208 Conn. 161, 171, 540 A.2d 1185
(1988).
 I
In D'Oench, Duhme Co. v. Federal Deposit Ins. Corp. ,315 U.S. 447 (1942), the Supreme Court concluded that there was a "federal policy to protect . . . [the FDIC] and the public funds which it administers, against misrepresentations as to the assets in the portfolios of the banks which . . . [the FDIC] insures or to which it makes loans." Id., 315 U.S. at 457. "In order to effect this federal policy, the Court fashioned a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded `side agreements' that altered the terms of facially unqualified obligations." Bell Murphy Assoc. v. Interfirst Bank Gateway, 894 F.2d 750, 753 (5th Cir. 1990).
 When the [FDIC] assumes control of a bank and attempts to enforce a note under the terms on its face, the borrower against whom the note is enforced cannot assert as a defense a collateral written agreement by the bank not to collect on the note. The [Supreme] Court held that permitting such collateral agreements to frustrate the collection of bank loans by the FDIC would completely destroy the ability of the FDIC to assess the solvency of lending institutions. . . . As a result of this decision, the principle of prohibiting the enforcement of agreements not appearing in bank records against federal agencies has become known as the D'Oench, Duhme doctrine.
Savers Federal Sav. Loan v. Amberley Huntsville, 934 F.2d 1201,1206 (11th Cir. 1991). "The doctrine has been extended considerably by the [federal] courts since the 1942 decision;"Beighley v. FDIC, 868 F.2d 776, 784 (5th Cir. 1989); and has been characterized as "a rule that today is expansive and perhaps startling in its severity." Bowen v. FDIC, 915 F.2d 1013, 1015 (5th Cir. 1990). CT Page 6267
Congress subsequently codified the D'Oench, Duhme doctrine at12 U.S.C. § 1823(e). Bateman v. FDIC, 970 F.2d 924, 926 (1st Cir. 1992). In 1989, Congress amended § 1823(e) by way of the Financial Institution Reform, Recovery and Enforcement Act ("FIRREA"), so that it would apply to the FDIC when it acts as a receiver as well as when it acts in its corporate capacity. FDIC v. Longley 1Realty Trust, 988 F.2d 270, 273 (1st Cir. 1993); Bowen v. FDIC, supra, 915 F.2d 1015 n. 3. In general, the federal courts apply the statute that is in effect at the time they render their decisions, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."Bradley v. Richmond School Board, 416 U.S. 696, 711 (1974). Since the note at issue in the present case is dated October 10, 1989, and the FDIC brought this action on January 28, 1994, § 1823(e) applies to the FDIC in its capacity as receiver for The Bank Mart.
"Courts often consider the D'Oench, Duhme doctrine and § 1823(e) in tandem, looking to the common law when construing the statute." Beighley v. FDIC, supra, 868 F.2d 784. Section 1823(e), as amended, provides that:
 No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement —
(1) is in writing
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee . . ., and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. § 1823(e) (revised to 1989). Agreements that do not CT Page 6268 comply with these four requirements are unenforceable against the FDIC. Langley v. Federal Deposit Ins. Corp. , 484 U.S. 86, (1987);FDIC v. Caledonia Inv. Corp. , 862 F.2d 378, 383 (1st Cir. 1988). Thus, special defenses and counterclaims asserted against the FDIC, when based on unrecorded "side agreements," are barred by both § 1823(e) and the D'Oench, Duhme doctrine. See, e.g., FDIC v. Kasal,913 F.2d 487, 493 (8th Cir. 1990); Astrup v. Midwest FederalSavings Bank, 886 F.2d 1057, 1059 (8th Cir. 1989); Beighley v.FDIC, supra, 868 F.2d 784; FDIC v. Vestring, 620 F. Sup. 1271, 1274
(D.Kan. 1985).
The defendants' first, fourth and fifth special defenses make reference to agreements to restructure the note or to materially modify the note in some respect. In asserting these special defenses, the defendants fail to allege: (1) that the agreements are in writing; (2) that the agreements were executed contemporaneously with the acquisition of the asset by the depository institution; (3) that the agreements were approved by the board of directors of the depository institution; and (4) that the agreements are an official record of the depository institution. Therefore, the first, fourth and fifth special defenses are legally insufficient and are barred by both 12 U.S.C. § 1823(e) and the D'Oench, Duhme doctrine.
The defendants' third special defense is based on allegations that the note is without consideration as to Barbara Piccolo, as it was executed solely for the benefit of John Piccolo. In D'Oench,Duhme Co. v. FDIC, supra, the Supreme Court, in holding that a maker of the note at issue was estopped to set up a defense of lack of consideration, stated that:
 [T]he reach of the rule which prevents an accommodation maker of a note from setting up the defense of no consideration against a bank or its receiver . . . is not delimited to those instances where he has committed a statutory offense. . . . [A]n accommodation maker is not allowed that defense as against the receiver of the bank . . . where his act contravenes a general policy to protect the institution of banking. . . .
Id., 315 U.S. 458-59. "Lack of consideration or any other defenses against payment to a federally insured financial institution or its receiver must be plainly evidenced by the institution's formal and CT Page 6269 board-approved records." Resolution Trust Corp. v. Juergens,965 F.2d 149, 155 (7th Cir. 1992). See also FDIC v. Gettysburg Corp. ,760 F. Sup. 115, 117 (S.D.Tex 1990). In CMF Virginia Land L.P. v.Brinson, 806 F. Sup. 90 (E.D.Va. 1992), aff'd, 952 F.2d 400 (1992), some of the defendants asserted a lack of consideration defense based on allegations that they were required to sign a guaranty without deriving any benefit from so doing. In rejecting this defense, the court, based on the D'Oench, Duhme doctrine, held that "[n]ot only does this [defense] undercut the entire philosophy behind the guaranteeing of loans, but the law dictates that such a defense cannot be effectively asserted against [an assignee of the FDIC]." Id., 94. Thus, courts have rejected a lack of consideration defense when it is not evidenced by a formal writing, as doing so would establish a scheme or arrangement likely to mislead banking authorities. FDIC v. Wright, 942 F.2d 1089, 1098
(7th Cir. 1991); Bradford v. American Federal Bank F.S.B.,783 F. Sup. 283, 284-85 (N.D.Tex. 1991).
In the present case, the defendants fail to allege that their lack of consideration defense is evidenced by a formal writing, or is otherwise contained in the formal records of the bank. Therefore, the defendants' third special defense is legally insufficient, and is barred by the D'Oench, Duhme doctrine.
The plaintiff also moves to strike the third and fourth counts of the defendants' counterclaim, as well as the defendants' sixth special defense. The third count of the counterclaim and the sixth special defense are based on allegations that the plaintiff violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691
et seq., because it required Barbara Piccolo to sign the note despite the fact that the application was not a joint application, and the fact that John Piccolo qualified for the credit. In the fourth count of the counterclaim, the defendants allege that the plaintiff violated General Statutes § 46a-66 by requiring Barbara Piccolo to sign the note.[1]
The ECOA provides in pertinent part that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . sex or marital status." 15 U.S.C. § 1691(a)(1). The Federal Reserve Board, pursuant to the ECOA, has promulgated a regulation which provides that: "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount CT Page 6270 and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (1992). A special or affirmative defense asserted pursuant to the ECOA "is not an affirmative defense which can render the entire debt invalid." CMF Virginia Land L.P. v. Brinson, supra, 806 F. Sup. 95. "A counterclaim certainly can be premised upon a violation of the ECOA, but such a violation cannot be alleged to avoid basic liability on the underlying debt." Id. This is because "[t]he ECOA on its face provides only for a civil action . . . for actual damages as a remedy. . . ." United States v. Joseph Hirsch Sportswear Co.,Inc., 1989 WL 20604 (E.D.N.Y. 1989), aff'd without op., 923 F.2d 842
(2d. Cir. 1990).
Thus, the defendants' sixth special defense must be stricken as a claim pursuant to the ECOA is not a defense to an action by the FDIC to collect on a note. However, the plaintiff's motion to strike the third count of the defendants' counterclaim must be denied on the ground that such a counterclaim to an action to collect on a note may be asserted pursuant to the ECOA. CMFVirginia Land L.P. v. Brinson, supra, 806 F. Sup. 95. Furthermore, since Barbara Piccolo's signature appears on the note, her counterclaim pursuant to the ECOA is not premised upon an unwritten agreement, and therefore, is not barred by the D'Oench, Duhme
doctrine. Sweeney v. Resolution Trust Corp. , 16 F.3d 1, 4 (1st Cir. 1994). Additionally, the plaintiff's motion will be denied as to the fourth count of the counterclaim, as a counterclaim based on the state statute will not be barred by the D'Oench, Duhme
doctrine, for the same reason that a counterclaim based on the ECOA is not barred.
 II
In support of their second special defense, the defendants allege that the plaintiff has wrongfully attached Barbara Piccolo's residence, and slandered the title to her property. Practice Book § 164 provides in pertinent part that "[f]acts which are consistent with [the plaintiff's statement of the facts] but show, notwithstanding, that he has no cause of action, must be specially alleged."
The defendants' slander of title defense is not consistent with the plaintiff's statement of facts, and does not show that the plaintiff has no cause of action on the note. Further, the defendants' slander of title defense must fail because it does not render the defendants' debt invalid. Accordingly, the plaintiff's motion to strike the defendants' second special defense will be CT Page 6271 granted.
The plaintiff also moves to strike the first and second counts of the defendants' counterclaim. In these counts, the defendants assert claims for intentional and negligent infliction of emotional distress respectively. These counts also contain claims for slander of title based on allegations that the plaintiff attached Barbara Piccolo's property without notice. In support of the slander of title claims, the defendants allege that the plaintiff unnecessarily attached Barbara Piccolo's property because the plaintiff already had security for the note in the form of the defendants' Stratford property. The plaintiff moves to strike these counts on the ground that the defendants, in executing a commercial mortgage note, waived their right to notice and a prior court hearing in conjunction with any prejudgment remedy sought by the plaintiff. The plaintiff also moves to strike the emotional distress claims stated in paragraph seven of each count on the same grounds.
Regarding the plaintiff's motion to strike paragraph seven of counts one and two, a motion to strike may not be directed at a single paragraph of a pleading unless that paragraph, by itself, states a cause of action. Donovan v. Davis, 85 Conn. 394, 397
(1912); Jaramillo v. Adis, 8 CSCR 660 (July 5, 1993, Ballen, J.);Michaud v. St. Mary's Hospital, 4 Conn. L. Rptr. 442, 443 (August 21, 1991, Byrne, J.); Ahsan v. Olsen, 3 CSCR 55 (November 9, 1987, Wagner, J.). Since the challenged paragraph does not, by itself, state a cause of action, the plaintiff's motion to strike must be denied with respect to the defendants' claims for intentional and negligent infliction of emotional distress.
With respect to the defendants' claims for slander of title, such a counterclaim is not barred by the D'Oench, Duhme doctrine, as the counterclaims are not premised upon an unwritten agreement.Sweeney v. Resolution Trust Corp. , supra, 16 F.3d 4. While the defendants may have waived their right to a hearing and notice pursuant to the terms of the note, this waiver alone would not render the defendants' claims for slander of title legally insufficient. The basis for the defendants' claims is that the plaintiff wrongfully attached Barbara Piccolo's residential property despite the fact that the defendants had secured the note by way of a mortgage on their real property located in Stratford. For this court to determine the sufficiency of the defendants' claims, the court would need to consider additional facts with respect to the plaintiff's reasons for attaching Barbara Piccolo's CT Page 6272 property. Where the grounds for a motion to strike are dependent upon underlying facts not alleged in the pleadings, the motion should be denied. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345,348, 576 A.2d 149 (1990). Accordingly, the plaintiff's motion to strike the first and second counts of the defendants' counterclaim should be denied.
The plaintiff's motion to strike is granted as to the defendants' first, second, third, fourth, fifth and sixth special defenses. The plaintiff's motion to strike is denied as to the defendants' entire four-count counterclaim.
SAMUEL S. FREEDMAN, JUDGE